IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARMEN L. CAMACHO ET AL.,

    Plaintiffs,

    v.

SAN JUAN BAUTISTA MEDICAL CENTER, INC., ET AL.,

    Defendants.

**Civil No. 10-1857 (SEC)**

**OPINION AND ORDER**

Before the Court are the defendant Ernesto Garcia-Santiago's motion for partial summary judgment (Docket # 144), the plaintiffs' opposition thereto (Dockets # 157 & 158), and the defendant's reply (Docket # 158). After reviewing the filings and the applicable law, the defendant's motion is **DENIED**.

**Factual and Procedural Background**

This is a diversity medical malpractice suit in which the plaintiffs seek damages for the death of their relative, José Manuel González-Ruiz. As relevant here, the plaintiffs sued Ernesto García-Santiago, one of the doctors who treated the decedent. After several procedural nuances, García-Santiago was granted leave to file a partial motion for summary judgment, which he did. See Dockets # 142 & 144. The plaintiffs opposed. Docket # 157 & 158.

García-Santiago's motion advances a simple and straightforward contention: He posits that, under the Regional Academic Medical Centers of Puerto Rico Act, also known as Law 136, P.R. Laws Ann. tit. 24, §§10031-10043, his liability is limited to a maximum of $75,000.

CIVIL NO. 10-1857 (SEC)                                                                                            Page 2

Presumably, García-Santiago couches his partial motion for summary judgment on Fed. R. Civ. P. 56(a) (motion must "identify[] each claim or defense—or the part of each claim or defense—on which summary judgment is sought") & 56(g) (court "may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case"). The succinct, material uncontested facts follow.

Since November 1, 2001, García-Santiago has been professor in the Internal Medicine Department (the "Department") of San Juan Bautista Medical Center, Docket # 144-1 ("SUF"), ¶ 1.[1] As part of his duties, he supervises and teaches students and doctors in graduate training at the Department. Id. ¶ 2. García-Santiago treated the decedent in the month of April 2008. Id. ¶ 3.

**Standard of Review**

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Avery v. Hughes, 661 F.3d 690, 693 (1st Cir. 2011). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court construes the record in

---

[1] The plaintiffs also sued San Juan Bautista Medical Center.

**CIVIL NO. 10-1857 (SEC)**                                                                 Page 3

the "light most flattering" to the nonmovant, resolving all reasonable inferences in that party's favor. Soto-Padro v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012).

  The summary judgment inquiry is grounded in the factual evidence available, since "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact at issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005) (quoting Garside, 895 F.2d at 48). A material fact, in turn, is one that may affect the outcome of the suit under the governing law. Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994).

  At any rate, to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Accordingly, once the party moving for summary judgment has established an absence of

**CIVIL NO. 10-1857 (SEC)**                                                                                              Page 4

material facts in dispute, and that judgment is proper as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Mendez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994)). "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue . . . . Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence"); Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve").

**Applicable Law and Analysis**

*Law 136*

In 2006, the Puerto Rico Legislature enacted Law 136, establishing that it "shall be the policy of the Commonwealth of Puerto Rico to acknowledge our responsibility for professional health education, especially for medical education, and for stimulating the development of teaching and of clinical, epidemiological and socio-medical research and health sciences services." P.R. Laws Ann. tit. 24, §10031 (citation and internal quotation marks omitted). Law 136 created the so-called Regional Academic Medical Centers (known by their Spanish acronym "CMARS"): "A group of one or more hospitals, health facilities, medical groups and health

**CIVIL NO. 10-1857 (SEC)**                                                                                                               Page 5

professionals education and training programs related to an accredited School of Medicine whose mission is to educate, conduct research and provide health services." Id. §10031(b). Law 136 provides in pertinent part that the "[CMARS] shall be the entities in each region established by law in charge of implementing the provisions of this chapter. . . ." Id. §10034(a). San Juan Bautista Medical Center is in turn part of the Central Region. See P.R. Regs. SALUD REG. 7497, R. 3(c)(1).[2]

As relevant here, Law 136 establishes a liability limitation for the "students, doctors in graduate training and the faculty members of the latter" of the San Juan Bautista Medical Center. See P.R. Laws Ann. tit. 24, §10035. Specifically, Law 136 limits their liability to a "maximum of seventy-five thousand dollars ($75,000) for damages suffered by a person and up to one hundred fifty thousand dollars ($150,000) when the damages were suffered by more than one (1) person or when there are several causes [of] action to which a single prejudiced party is entitled." Id. (alterations in original).

As said, García-Santiago claims that, under Law 136, his liability is limited to at most $75,000. The plaintiffs demur, arguing, among other grounds, that García-Santiago should be barred from asserting this defense at this late stage of the proceedings, as they are now incapable of defending themselves. See Docket # 156, p. 2. This, they maintain, is because García-Santiago raised this defense for the first time at the Pretrial Conference and over 2 years from the filing

---

   [2] The Court assumes without deciding that, at the time of the events giving rise to this case, the rules and regulations for the Central Region CMAR were in full effect. This, in view of the plaintiffs' failure to argue otherwise.

**CIVIL NO. 10-1857 (SEC)**                                                                 Page 6

of the complaint. García-Santiago, the plaintiffs further say, failed to raise this defense in his answer. Docket # 29. Nor did he plead such a defense in any of his amended answers. Dockets # 37 & 76. The Court agrees with the plaintiffs.

García-Santiago's failure to plead and his belated raising of this defense amounted, the Court holds, to a waiver thereof. It is common ground that, under Rule 8(c) of the Federal Rules of Civil Procedure, "[t]he ordinary consequence of failing to plead an affirmative defense is its forced waiver and its exclusion from the case." Jakobsen v. Massachusetts Port Auth., 520 F.2d 810, 813 (1st Cir.1975) (citation omitted); see also, e.g., Davignon v. Clemmey, 322 F.3d 1, 15 (1st Cir. 2003); Depositors Trust Co. v. Slobusky, 692 F.2d 205, 208 (1st Cir. 1982). Although a cap on damages is not listed as an affirmative defense, see Fed. R. Civ. P. 8(c), there is more than meets the eye. And while a circuit split exists regarding whether a limitation on damages is actually an affirmative defense, see Carter v. United States, 333 F.3d 791, 796 (7th Cir. 2003) (Posner, J.) (citing cases evincing circuit split), the First Circuit has unequivocally held that "while a statutory limitation on liability is not enumerated among the listed defenses, . . . it falls within the Rule's residuary clause." Jakobsen, 520 F.2d at 813 (emphasis added); accord Carter, 333 F.3d at 796 ("A cap on damages is only a partial defense, but that is true of any defense that is limited to the amount of damages, and in that respect it is no different from comparative negligence, which clearly is an affirmative defense."); see also Westfarm Associates Ltd. P'ship v. Int'l Fabricare Inst., 846 F. Supp. 439, 440 (D. Md. 1993), aff'd sub nom, 66 F.3d 669 (4th Cir. 1995).

**CIVIL NO. 10-1857 (SEC)**                                                                 Page 7

This does not end the matter, however. "When there is no prejudice and when fairness dictates, the strictures of this rule may be relaxed." Jakobsen, 520 F.2d at 813; Haseotes v. Cumberland Farms, Inc. (In re Cumberland Farms, Inc.), 284 F.3d 216, 226 (1st Cir. 2002). This is because under Rule 15 of the Federal Rules of Civil Procedure, courts "should liberally allow an amendment to the pleadings if prejudice does not result. And if an affirmative defense is actually tried by implied consent, the pleadings may be later made to conform." Id. (citing Fed.R.Civ.P. 15(b)). But the plaintiffs have unequivocally refused to consent to this defense. And such a resistance is understandable, given how old this case is, coupled with the prejudice that will be caused to them if García-Santiago were allowed to come forward with this belated defense. See id. at 816 ("The delay undercut plaintiff's ability to develop facts and fashion his case in a manner relevant to this defense."). This is not the case "where the opposing party already had notice of the defense through some means other than the pleadings, or would not have benefitted from advance notice in any event—in other words, where the delay was harmless." Haseotes, 284 F.3d at 226. Here, García-Santiago has failed to explain why he decided to wait until now to advance this last-minute defense, especially when the facts in support thereof where not "obscure" to him; he should have "flagged [it] early for the benefit of plaintiff, who would have to meet it." Jakobsen, 520 F.2d at 816.

Lastly, García-Santiago has failed to request leave to amend his answer, and in any event, the Court would deny such a request, because it would entail the reopening of discovery. Indeed, the plaintiffs would be entitled to conduct discovery on this front (e.g., to depose García-

**CIVIL NO. 10-1857 (SEC)**      **Page 8**

Santiago and to request documents regarding the rules and regulations of the Central Region CMAR), so as to have a fair chance at defending themselves. This would further delay this soon-to-be 3-year old case. In the interest of finality, then, the Court declines to reopen discovery, not least because trial is potentially scheduled for May—as indeed agreed by the parties at the Pretrial Conference. See Docket # 142.

    Accordingly, because García-Santiago failed to plead his affirmative defense, the Court deems it waived. His eleventh-hour statutory defense is rejected, and his partial motion for summary judgment is therefore **DENIED**.

**Conclusion**

For the reasons stated, García-Santiago's motion partial motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 21st day of February, 2013.

                                      *s/Salvador E. Casellas*
                                      SALVADOR E. CASELLAS
                                      U.S. Senior District Judge